**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL ACTION NO. 22-327-DLB**

**YOLANDA MASTERSION**                                                                 **PLAINTIFF**


**v.**                                     **MEMORANDUM OPINION AND ORDER**


**KILOLO KIJAKAZI,**
**COMMISSIONER OF SOCIAL SECURITY**                                     **DEFENDANT**

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying her application for disability insurance benefits and supplemental security income benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be **affirmed**.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed her current application for disability insurance benefits (DIB) and supplemental security income benefits (SSI) alleging disability beginning on February 17, 2020 due to high blood pressure, diabetes, thyroid problems, sciatic nerve issues, shoulder injury, Factor 5 disease and blood clots (Tr. 330).   This application was denied, then proceeded to an administrative hearing, conducted by Administrative Law Judge Jerry Lovitt (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified.   At the hearing, Kelly R. Hutchins, a vocational expert (hereinafter "VE"), also testified.

1

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1:   If the claimant is performing substantial gainful work, he is not disabled.

Step 2:   If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3:   If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 15-30). Plaintiff was 46 years old on the date of alleged onset. She has a high school education and has worked as an assistant restaurant manager, cashier, and dietary aide. (Tr. 331-332).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since she applied for benefits. (Tr. 17).

The ALJ then determined, at Step 2, that Plaintiff suffers from obesity, degenerative disc disease with lumbago and radiculopathy, poorly controlled Type II diabetes mellitus and a clotting disorder, which he found to be "severe" within the meaning of the Regulations. (Tr. 17-18).

2

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 17-19). In doing so, the ALJ specifically considered Listing 1.15 (Tr. 18-19).

At Step 4, the ALJ found Plaintiff could not perform his past relevant work but that she has the residual functional capacity ("RFC") to perform for a range of sedentary work (Tr. 18-21). *See* 20 C.F.R. §§ 404.1567(a); 416.967(a).   The ALJ included the following exceptions: occasionally climb ramps and stairs, occasionally stoop, balance, kneel, and crouch, cannot crawl, climb ladders/ropes/scaffolds, or be exposed to unprotected heights, no more than occasional exposure to temperature extremes, vibrations, and workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost, occasionally able to push/pull both hand and foot controls with the bilateral upper and lower extremities, requires an occupation with an established and predictable routine and with set procedures in place, needs a work setting with minimal changes occurring during the workday, and with no manufacturing sector fast-paced production line or production pace assembly line work. (Tr. 21).

 The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE.

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner . Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision.   Both parties have filed Motions for

Summary Judgment (Doc. # 7 and 10), and this matter is ripe for decision.

## II.  STANDARD OF REVIEW

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence.   "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.   *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).    If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm.   *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).   "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility."   *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988).   Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

## III.   ANALYSIS

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) he should have found her presumptively disabled at Step 3; (2) the ALJ did not properly evaluate the opinion evidence; and (3) the ALJ did not properly evaluate Plaintiff's subjective symptoms.

4

**A.**

Plaintiff's first claim of error is that the ALJ should have found her presumptively disabled at Step 3. Specifically, she maintains that her impairments met the requirements of Listing 1.15.

At Step 3, a claimant has the burden to show that she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant meets **all** of the criteria of a listed impairment, she is disabled; otherwise, the evaluation proceeds to Step Four. 20 C.F.R. § 404.1520(d)-(e) (emphasis added); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers v. Comm'r of SSA*, 582 F.3d 647, 653 (6th Cir. 2009) ("A claimant must satisfy all of the criteria to meet the listing.").

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (noting that, without such analysis, it is impossible for a reviewing court to determine whether substantial evidence supported the decision).

"A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether [s]he satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks*, 544 F. App'x at 641- 42)). "Rather, the claimant must point to

specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding harmless error when a claimant could not show that he could reasonably meet or equal a listing's criteria).

Here, Plaintiff challenges the ALJ's finding that her impairments do not meet or equal Listing 1.15 (spinal disorders that result in nerve root compromise). The relevant Listing provides:

1.15 Disorders of the skeletal spine resulting in compromise of a nerve root(s), documented by A, B, C, and D:

A. Neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s):
    1. Pain; or
    2. Paresthesia; or
    3. Muscle fatigue.

and

B. Radicular distribution of neurological signs present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:
    1. Muscle weakness; and
    2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2); and
    3. Sensory changes evidenced by:
        a. Decreased sensation; or
        b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or
    4. Decreased deep tendon reflexes.

and

C. Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.

and

D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:

    1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or

    2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or

    3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15.

The ALJ found that Plaintiff did not satisfy 1.15B or D and, as such, did not qualify as presumptively disabled under this particular listing. In doing so, he discussed medical evidence and cited the record. With regard to 1.15B, the ALJ explained that Plaintiff's treating neurologist found her strength intact and gait normal thereby precluding any finding of muscle weakness, which is mandatory in this listing.   As for 1.15D, the ALJ noted that there was no documented need for a mobility device in the record nor was there evidence indicating Plaintiff's inability to perform fine and gross movements with at least one upper extremity.   The record supports his conclusions.

In disputing the ALJ's findings, Plaintiff points to Kursheed Siddiqui, M.D.'s June 18, 2020 note in which he diagnosed lumbar radiculopathy. (Tr. 627). Yet, upon reading that note in its entirety, it appears that Dr. Siddiqui's diagnosis was based upon Plaintiff's subjective reports, which any ALJ is not required to accept. She also relies upon a

January 2020 MRI of her lumbar spine (Tr. 1001).   However, that study shows only mild findings. *Id.*   Finally, she argues that the ALJ did not properly assess her pain. Yet, the ALJ specifically cited her subjective reports of pain in his analysis. (Tr. 18).   Moreover, as the Commissioner points out, Plaintiff has not addressed how the evidence in the record satisfies **all** of the requirements of Listing 1.15.   As such, she has not carried her burden of presenting specific evidence that demonstrates she reasonably could meet or equal every requirement of Listing 1.15.   For these reasons, her argument is incomplete and unpersuasive.

**B.**

Plaintiff's second claim of error is that the ALJ did not properly evaluate the opinion evidence. Specifically, she objects to the ALJ's assessment of the opinions of consultative examiner Jennifer Fishkoff, PsyD, and treating neurologist William Brooks, M.D.

The Commissioner significantly changed the way medical source opinions are evaluated for claims filed on or after March 27, 2017, such as Plaintiff's. *See* 20 C.F.R. § 404.1520c (2017). As an initial matter, the regulations no longer use the term "treating source"; instead, they use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *Id.*   More importantly, following notice and comment, the Commissioner chose not to retain the "treating source rule" that could require deference to treating source opinion evidence. 82 Fed. Reg. at 5853. As the agency explained, since adoption of the "treating source rule" in 1991, healthcare delivery has changed in significant ways, and the agency's adjudicative experience has shown that the source of an opinion is no longer the most important factor for determining the

8

persuasiveness of the opinion. *Id.*

In evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (2017).

Furthermore, while the agency adjudicator—in this case the ALJ—must articulate his  consideration of all medical opinions, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (e.g., requirement that adjudicators must "give good reasons" for the weight given a treating source opinion). *Compare* 20 C.F.R. § 404.1527(c)(2) (2016) and 20 C.F.R. § 404.1527(c)(2) (2017) with 20 C.F.R. § 404.1520c(b) (2017).

Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) using the following five factors: (1) Supportability (2) Consistency (3) Relationship with the claimant (which includes) (i) Length of the treatment relationship (ii) Frequency of examinations (iii) Purpose of the treatment relationship (iv) Extent of the treatment relationship (v) Examining relationship(4) Specialization (5) Other factors. 20 C.F.R. § 404.1520c(a)-(c) (2017).

The ALJ will explain how he considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2) (2017). The ALJ must explain in his or her decision how persuasive he

or she finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. *Id.* The ALJ may, but is not required to, explain how he considered the other remaining. 20 C.F.R. § 404.1520c(b)(3) (2017).

Jennifer Fishkoff, PsyD conducted a consultative psychological examination of Plaintiff in October 2019. (Tr. 481-486). She opined that Plaintiff had compromised concentration and short-term memory, a severe impairment in tolerating frustration and conforming to vocational social standards, a moderate impairment in understanding, retaining, and following instructions, and a severe impairment in performing simple and repetitive tasks during full time work. (Tr. 486).   The ALJ discussed this opinion and found that it was not supported by Fishkoff's own examination notes or other credible evidence in the record. He made numerous findings in this regard. The ALJ recounted Fishkoff's unremarkable findings as to orientation, recall, calculation, reason and her friendly, cooperative manner.   He pointed out that these were at odds with Fishkoff's opinion of extreme limitation. (Tr. 25). The ALJ then compared Fishkoff's opinion with other findings in the record of normal affect and mood, alertness, clear speech, and lack of cognitive defect. *Id.*   A review of the decision makes clear that, in keeping with the Regulations, the ALJ evaluated both the supportability as well as the consistency of Fishkoff's opinion. As such, the Court finds no error.

Plaintiff also contends that the ALJ improperly discounted the opinion of Dr. Brooks that she is unable to work due to sciatica and degenerative disc disease. (Tr. 959). The ALJ did not err in disregarding these conclusory remarks. It is within the province of the ALJ to make the legal determination of disability. The ALJ is not bound by a

10

physician's conclusory statement, particularly where the ALJ determines, as he did in this case, where there is medical proof that Plaintiff retains the RFC to work in some capacity other than her past work. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

**C.**

Finally, Plaintiff contends that the ALJ did not properly evaluate her subjective symptoms.

Evaluating an individual's subjective symptoms is a two-step process. SSR 16-3p, 2017 WL 5180304, at *3. First, the ALJ must consider whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* The ALJ must then evaluate the intensity and persistence of the individual's symptoms and determine the extent to which they limit the individual's ability to perform work-related activities. *Id.* At the second step, the ALJ may consider evidence directly from the claimant, or gleaned from other medical and non-medical sources (such as family and friends). *Id.*

An ALJ must consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including the daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The ALJ must also determine the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.*

An ALJ is not required to accept a claimant's subjective complaints, *Jones v. Comm'r of Soc. Sec.*, 336 F. 3d 469, 476 (6th Cir. 2003), and need not "make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).   The ALJ's evaluation  should be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248; *see also* SSR 16-3p, 2017 WL 5180304, at *10.   The ALJ need not use any "magic words," so long as it clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617-JDG, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).

The Court is mindful that the ALJ's evaluation of subjective evidence receives great deference from a reviewing court. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). Absent compelling reason, a court may not disturb the ALJ's analysis of the claimant's subjective complaints, and the conclusions drawn from it. *Id*. (internal quotations and citations omitted); *see also Gooch v. Sec'y of Health & Human Servs.,* 833 F.2d 589, 592 (6th Cir.1987) ("we will not normally substitute our impressions on the veracity of a witness for those of the trier of fact").

Here, a review of the ALJ's decision reveals that the ALJ considered the entire record, based his findings on multiple relevant factors, and provided "specific reasons for the weight given to the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

Indeed, he discussed Plaintiff's testimony at lengthy and in detail and noted the contradictory evidence in the record as well as the lack of support in the medical record. This was entirely appropriate and in keeping with the Regulations. To the extent that Plaintiff suggests that this evidence is open to another interpretation that favors her claim, the Court declines to reweigh the evidence in this fashion. If the Commissioner's decision denying benefits is supported by substantial evidence, as it is here, the Court must affirm that decision. *Longworth v. Commissioner of Social Security*, 402 F.3d 591, 595 (6th Cir. 2005). Even if substantial evidence exists to support Plaintiff's claim, the Court should still affirm the Commissioner's decision because it is supported by substantial evidence. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (even if the Court would have decided the matter differently than the ALJ, if substantial evidence supports the ALJ's decision, it must be affirmed.)

## IV.   CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment (Doc. # 7) be **DENIED** and the Defendant's Motion for Summary Judgment (Doc. # 10) be **GRANTED**.

A Judgment in favor of the Defendant will be entered contemporaneously herewith. This 23rd day of March 2024.



Signed By:

*David L. Bunning*

**United States District Judge**